WILLIAM W. GALLUP & others *vs.* JOSIAH Q. ROBINSON.

An attachment made after the first publication of notice of proceedings in insolvency and before the assignment of the debtor's property is invalid.

A creditor, after the first publication of notice of proceedings in insolvency against his debtor's estate, but before the appointment of assignees, attached furniture in his debtor's house; some of the property in the house was claimed by his wife and other persons, and the assignees, to avoid litigation, and by way of compromise, left with such claimants a part of the property, including that attached; the attaching creditor recovered judgment and delivered the execution to the officer who had attached the goods; and he did not levy the execution, and did not return the writ till seven months afterwards. *Held,* that the creditor could not recover against the officer for neglecting to levy on the property attached; but could only recover nominal damages for neglect in returning the execution

On the trial of an action against a deputy sheriff for neglecting to levy and return an execution, the plaintiff stated that there was one count in the declaration which charged the defendant with neglecting to return the execution; the defendant introduced no evidence on this point, but relied on proceedings in insolvency against the plaintiff's debtor as a defence to the action; and this position was sustained by the judge, who assured the plaintiff that everything would be open to him on exceptions. *Held*, on a bill of exceptions stating these facts, that the plaintiff could claim nominal damages for neglect in returning the execution.

ACTION OF TORT against a deputy sheriff for negligence in levying and returning an execution against Joseph L. White. At the trial in the court of common pleas before *Briggs*, J., the plaintiff introduced evidence of the following facts:

In March 1856, White, being indebted to the plaintiffs, absconded from the Commonwealth, and his creditors thereupon commenced proceedings in insolvency against him, the first notice of which was published on the 3d of April. On the 10th of April the plaintiffs sued out a writ against White to recover their debt, gave it to the defendant with written directions to attach certain property, and the defendant returned that he had attached it. On the 11th of April, an assignment of White's estate was made by the judge of insolvency. The plaintiffs entered their action at June term of the court of common pleas, and recovered judgment, and within thirty days gave the execution issued thereon to the defendant. But the defendant made no service thereof, and neglected to return it into the clerk's office till February 1857.

All the furniture in the house occupied by White, including the property attached, was claimed by his wife and daughter " and as belonging in fact to the Penniman estate; " and the assignees, a few days after their appointment, inquired into the validity of the claim, and concluded, in order to avoid litigation to compromise with the claimants, and leave them part of, th furniture, including the property attached; and made known their conclusion to White's family, and to the plaintiffs and defendant, while said attached property was yet in Adams, where White had lived, and the plaintiffs requested the defendant to hold on to the property, which the defendant agreed to do, but notwithstanding permitted it to go into the posses-

sion of White's family, by whom it was sent to White's wife in Ohio.

The plaintiffs' counsel at the trial stated that one count in the declaration charged the defendant with neglecting to return the execution; and introduced evidence to that effect. The defendant introduced no evidence as to this part of the plaintiffs' claim, but contended that the insolvency proceedings dissolved the attachment, and that therefore he was under no obligation to keep the property; and the court, being of the same opinion, directed a verdict for the defendant. The plaintiffs, as the bill of exceptions stated, " in the discussion before the court did not claim nominal damages by using that particular language, but were urging new and further views, when they were stopped by the court with the assurance that everything would be open to them on exceptions."

*J. T. Robinson*, (*T. Robinson* with him,) for the plaintiffs.

*H. L. Dawes*, for the defendant.

MERRICK, J. This action is brought to recover compensation for damages resulting from an alleged official misconduct of the defendant in omitting to levy an execution in favor of the plaintiffs against Joseph L. White, on certain goods and chattels previously attached on mesne process as the property of the debtor. The defendant concedes that he made the attachment, that the execution was committed to him to be duly served, and that he omitted to levy it as the plaintiffs have alleged. But he denies that this omission was a failure in the performance of his official duty, or that it created any liability against him in favor of the plaintiffs, because, as he contends, the goods and chattels attached were not, at the time of the attachment, or ever afterwards, the property of White, but belonged either to his assignees or to some other person who was no party to the suit. It is not claimed by the plaintiffs that this action can be maintained if either of those propositions is true. For it is plain that an officer is under no obligation, and has no right, to execute a civil process committed to him for service by seizing the person or property of a party against whom it does not run. And it has been distinctly and repeatedly determined

that the failure or omission of a sheriff to levy an execution upon goods which did not at the time of the attachment or afterwards belong to the debtor, though they had been attached as his, does not constitute any legal negligence or misconduct, and gives to the creditor no cause of action against him therefor. *Fuller* v. *Holden,* 4 Mass. 498. *Boynton* v. *Willard,* 10 Pick. 166. *Canada* v. *Southwick,* 16 Pick. 556.

But the first and principal question of law which arose at the trial, the determination of which by the presiding judge was unsatisfactory to the plaintiffs, related to the validity and legal effect of the attachment of the goods of an insolvent debtor, made between the first publication of the issuing of the warrant against him and the day of the transfer and assignment of his estate to the persons duly chosen to be his assignees. From the evidence produced at the trial it appeared that the first publication in this case was on the 3d of April, the transfer and assignment of the debtor's estate to the assignees was on the 11th, and the attachment made on the writ of the plaintiff was on the 9th of the same month. There is no suggestion or pretence that the debtor acquired any interest in or title to the goods attached, after the first publication and before the assignment of his estate; and therefore the judge assumed nothing but what was assumed and agreed by the parties, in predicating his judgment merely upon the legal effect of the assignment upon the attachment. He held that the assignment was effectual to pass the property to the assignees, and to invalidate and nullify the attachment. And this manifestly was correct. For the statute in terms provides that the assignment " shall vest in the assignees all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed, or which might have been taken in execution on any judgment against him, at the time of the first publication of the notice of issuing of the warrant." *St.* 1838, c. 163, § 5. And in the case of *Judd* v. *Ives,* 4 Met. 401, it was held that upon the first publication of the notice, the debtor becomes divested of all the property of which he is then the owner, that it is immediately placed in the custody

of the law, that the rights of his creditors to the ultimate disposal of it for their own benefit are thereby fixed and rendered unalterable by any act of his, and that the subsequent assignment to the assignees relates back to that time, and vests in them all the estate, not exempted from attachment or seizure on execution, to which he was then entitled. The principle laid down in that case is in exact conformity to the provisions of the statute upon the subject, and is quite decisive of the question raised by the plaintiffs at the trial, and reserved in the bill of exceptions. If the goods attached on the suit of the plaintiffs against White had ever been the property of the debtor, and he had not otherwise disposed of them, they were, upon the first publication of the notice, transferred to the custody of the law, subject to all the consequences which would result from the further proceedings in insolvency which had been duly instituted. By the subsequent assignment the title to all his estate became absolute in the assignees, and could not of course after that date be treated by himself or by others as if in any respect the title was in him. The sheriff therefore could not lawfully levy the plaintiff's execution upon it.

Nor was any right to the property attached acquired by White by or through the arrangement made by his assignees with the persons who severally claimed it as their own. There is no pretence that it was ever given up or released by the assignees to him. On the contrary, the arrangement by which the assignees declined to take it into their own possession was not made with him, but with Mrs. White, who by our law may have been capable of owning and holding it to her own separate use, (*Sts.* 1845, *c.* 208, § 10 ; 1855, *c.* 304,) and with his daughter and with those who represented the Penniman estate. It is of no consequence with which of those parties claiming the property the arrangement was made, since there was no negotiation upon the subject with the debtor, nor any relinquishment or transfer of the property by the assignees to him. In whatever aspect therefore the matter is considered, the result, so far as the rights and liabilities of the defendant are involved, must necessarily be the same. If the goods attached

never belonged to White, or if, being his at the time of the first publication of the notice, the attachment upon them was dissolved and nullified by the proceedings against him in insolvency and by the deed of assignment to the assignees, and they were clearly legally transferred to them, and he never afterwards acquired any title thereto, they could not lawfully be taken on the execution in favor of the plaintiffs against him ; and the defendant incurred no liability by refusing and omitting to do so.

But the neglect of the defendant to return the execution until long after the return day was a violation of his duty, of which the plaintiffs have a right to complain. The omission to return the execution as alleged is not denied, but it is contended that the plaintiffs cannot now avail themselves of this cause of action, because the question was not distinctly raised at the trial nor reserved in the exceptions. But the fact is otherwise. Upon the trial the plaintiffs brought the attention of the court to that count in their declaration, in which this alleged grievance was distinctly set forth ; to which the defendant made no answer, but relied upon the proceedings in insolvency as a sufficient ground of defence thereto ; in which position they were sustained by the presiding judge, who however accompanied his rulings against the plaintiffs on this point with " the assurance that everything would be open to them in their exceptions." The question therefore is fairly and fully open to reëxamination. But nominal damages only can be recovered on account of this neglect. For this the plaintiffs should have had a verdict. *Goodnow* v. *Willard*, 5 Met. 517. *Laflin* v. *Willard*, 12 Pick. 64. The exceptions therefore, though on all other grounds overruled, must, upon this, be sustained, and the verdict for the defendant be set aside and a new trial granted unless judgment for the plaintiffs with nominal damages shall be entered by consent of the parties.